Green Kelly. Would you like to reserve some time? Yes, I'd like to reserve five minutes. Okay, that'll be granted. And you may proceed when you're ready. May please the court. We're here because the district court denied a preliminary injunction for lack of irreversible harm based solely on a procedural due process claim arising from the is using an unauthorized audit process to gin up fees. It conflicts with the strong federal policy of deciding this cheat with administrative ease in the three step process articulated in Delaware versus New York. Hey, can I ask you about that specifically, Miss Green Kelly, because I'm looking at page five of your opening brief. And you say that the primary rule gives us cheat to the state of the creditors last known address as shown by the debtors books and records. But third, you're you've laid you're laying out the three rules from the Texas Trilogy. If the debtors records disclose no address for creditor, the secondary rule awards the right to a sheet to the state in which the debtor is incorporated. Now, my question for you is, is that a full and accurate statement of that set of that last piece? Also, if a state does not have an estate statute, it also would go to the holders state of incorporation, right? And isn't that a pretty significant omission there in your description? Because that that issue, whether the another state that is the state of residence of the creditor has an estate law, that'll make a significant difference in whether or not what Delaware is suggesting is it's due here is really as outlandish as you claim it is. Well, all 50 states and the District of Columbia and the territories all have estate statutes now. So that really doesn't come into play anymore. But are all those estate statutes identical? A virtual? Well, not exactly, but very, very close. Aren't there aren't there states in which business to business debt is not as cheatable? Yes, but in marathon, which you know, well, this court held that when a state has a statute, but exempt certain property, the holder has a right to that property. And another state lacks would be interfering with the sovereignty of the state that actually has a steep jurisdiction over the property, if it were to then claim that property. You know, I try to think back and remember stuff I said before, but I'm not, I'm not claiming that the way you frame that is exactly what I said. But let's just stick with what I'm, I'm endeavoring to ask you right now, which is, if it's in fact the case, I believe it is that there are states that do not provide for his treatment of business to business debt. That means that the kind of debt that's at issue will make a difference in whether or not Delaware's entitled to claim it or not, correct? Correct. Okay. And if that is the case, then what is wrong with Delaware saying, look, we need more information from you to understand whether we've got a claim to this or not? I may have misstated my answer before I didn't understand your question. Exactly. If you were a business to business exemption, whether Delaware actually can claim that property, the answer is no, according to the marathon opinion and New Jersey retail merchants. They, why is it? Well, help me with that. Assume the fact situation you just described, there's an Ohio resident. The Ohio resident is a business. There's a business to business debt. Ohio doesn't provide for that as treatment. Now it should be clear. Maybe we should start at even a lower level. Assume that assume the existence of, of the debt, right? That you'd have to acknowledge that. And if we took it as Siemens debt, it's not Siemens money, right? Siemens has got no claim to it. It's it belongs either to the person to whom it was owed, or it belongs to the state where if that person doesn't step forward where they're that person or business exists, or if that person can't be found or the state where they live or doesn't provide for a statement, it can be taken by the state of incorporation. That's the way it operates, doesn't it? No, I mean, it's the same as taxes. You know, Florida doesn't have an income tax. So I moved to Florida. But that doesn't mean Delaware can follow me there and tax my income with not asking. I'm not asking you that. I'm just asking you how the Texas trilogy works. The way the Texas trilogy works. Doesn't it work? Straighten me out if I'm wrong. But I thought I just laid out exactly how it works. If that if they live in Ohio, Ohio gets it. If they live in Ohio, and Ohio doesn't provide for a statement of that, but the business that's holding the debt does provide for it. Excuse me, the the state where they're incorporated does provide for that statement, then that state gets it. Isn't that isn't that there's not some fourth way out? Is there? Well, yes, because Ohio statute actually does provide for his chief, it just exempts the reporting requirement required for the business to business exemption. But it has an esteemed statute that provides don't take me into Ohio specifically, like say state x, I'm not asking about Ohio specifically, I am trying to get you to acknowledge which I think you have to acknowledge that this is a closed system. There's not some leakage someplace else. Right? If if this if state x doesn't provide for the achievement, then the state of incorporation can eschew it. And and in no circumstance is the holder of the debt, a business like Siemens allowed to say, it's mine, if one of these states who could eschew it wants to, isn't that right? It isn't because in the Third Circuit under the Marathon Petroleum case, and New Jersey retail merchants, this court held that another state cannot interfere with the sovereign right of a state to eschew or to decide not to eschew. Did I did I did I not lay out the Texas trilogy accurately? Because I'm pretty sure we can't overrule the Supreme Court. So we got to stick with what the Supreme Court said. Do you acknowledge or not acknowledge that the way this the trilogy works is the way I just outlined it. Don't take me into marathon. I don't believe so. Because at the time of Texas versus New Jersey, only 10 states had eschewed statutes. And they were addressing that eventuality, the fact that only 10 states had eschewed statutes. So they were saying, well, if you don't have an eschewed statute, then your state of incorporation can take it. But now all states have an eschewed statute. So that provision in the Texas trial in the Texas versus New Jersey is mooted. There is no situation where that will arise. And it interferes with the sovereignty of a state that might want companies to incorporate in their state, just like states do when they don't have income tax. It interferes with their sovereignty and their decision to have an eschewed statute and exempt the reporting requirement for certain kinds of property. So you're just to be clear, your legal position is there's no state in the union which exempts any kind of property. They might have different reporting requirements, but there's not a state or a district in a whole country that exempts business property, for example, business debt, just doesn't exist. That's what you're telling us now, right? Because you're saying it's mooted. So what you're saying is that eventuality can never arise. That's what I'm hearing. Am I hearing it right? Hello? Can you hear me now? Okay. I'm sorry. Everybody froze. I'll see. I didn't hear the question. No. I'll try it one more time. Okay. What you're saying is there's not a state in the union that exempts business property or exempts some other category of property. Your assertion, your legal position here today is the Texas Trilogy possibility of a non-eschewing state no longer exists. Correct. Okay. So if we found one state where that was not the case, your argument falls apart, right? Well, with respect to that state. Okay. And if it falls apart with respect to that state, then the question of what kind of debt you've got matters. I'm still with you. I think they'll indulge me. Okay. So if we find one state where that doesn't happen, your argument disintegrates, right? Well, it doesn't disintegrate. It only doesn't apply to that state. Now we're talking about reporting. The only way to know is for them to be able to inquire and find out from you what kind of property, what kind of debt, right? Yes. They'd have to find out what kind of debt. Okay. But they've already done it in this case. In this case, they have already identified all of the debts. The only thing left is for Siemens to prove that it's not unclaimed property. And the state wants to audit property Delaware cannot claim under the Texas Trilogy. Is it in the record that you've identified the kinds of debt that is, whether it's business to business or other kinds of debt, that's in the record? It is in the record. And the list of items that Delaware wants to audit is in the record. It's a bunch of checks for vendors. It's a bunch of credits for customers. And the names and addresses are already identified. The only ones that have not been researched to defend against. I mean, there is no case, no law review article, even that says that a state agency can require a company to defend themselves. So they are refusing to conclude the audit because Siemens refuses to defend against a presumption of abandonment for checks and credits with owner addresses in other states that whether they're an, whether they are unclaimed property or not, Delaware can't claim them, even if they are. And none of them, all of the ones that have a business name and address are identified. They are all identified. And the record shows how much of that is business to business. So this is not about auditing to see if something is business to business exempted. It's about auditing property for the purpose of holding up Siemens for a settlement. They terminated the expedited audit election, not because Siemens didn't answer all the questions. They gave them everything. The audit reports they have show the most Delaware can claim in all of the items the auditors identified. But they still, but they told us, they told us, they admitted they're not going to end the audit because they want interest and penalties on the table if we're going to sue to challenge a final demand. And they told us the audit report shows what you owe, pay up, negotiate based on that amount. Yet the amount that they show was an amount that the Temple Inland case said, shocked the conscience, violated due process, because it was an estimate based on property Delaware cannot claim because the owner's addresses were in other states. The only reason this audit isn't over after 11 years is because Delaware is holding us up for a settlement. They don't want another Temple Inland case. So they refuse to give us a demand. They terminated an expedited audit election that Siemens was entitled to having terminated, concluded audit by December 6, 2019. And the status cheater admitted that her reason for not doing that was so that interest and penalties would be on the table if we were going to sue, just like a case like Temple Inland. And the secretary... They're not on the table with, if it were an expedited audit, is that correct? Correct. If we had finished, that's why we elected the expedited audit, because it allowed us by December 6, 2019, and a waiver of interest and penalties. That's why we did it. And they finished six months early. And yet Delaware kept saying, no, you've got to defend yourself against the presumption of abandonment to all 6,000 checks and credits with owner addresses in other states that Delaware cannot claim under any circumstance, because the primary rule allows the state of the address to claim it. And your assertion is under any circumstance, that depends on your having disclosed all the information that would eliminate any argument that this is not a suitable property in the state of residence. They have already conducted the entire audit. There wasn't a single outstanding information request out there, other than prove this stuff is not unclaimed property. That's defending ourselves. Seamus doesn't have to defend themselves. They're waiting for a demand. But Delaware won't give us a demand because they're afraid we're going to file a lawsuit like the Temple Inland lawsuit. And instead, they want to hold us up for settlement. You're a little bit over time. You did reserve five minutes. And I'm wondering if in your five minutes, we have a concern about pending appellate jurisdiction as well. So maybe you can address it during that five minutes. So we'll hear from you on rebuttal. And, and we'll allow the appellees to go. Good afternoon, Your Honors. Mary Dugan on behalf of the defendants here who are Richard Audit been completed, as your adversary seems to say, the examination has not been completed. So what's left to do? So the reason why the examination has not been completed is because Siemens itself elected to insisted, in fact, that the state take the 6000 items, and as the universe, and the state has requested that Siemens research and remediate those items. And why isn't Siemens entitled to say, you know, we there's nothing more we have to say about it, you can do it, you can make your judgments now based on what you think based on it, we have nothing additional to say what obligates them in the law to do what you're saying is doing. The situation is, is a circumstance of they have done in saying, we are not going to do anything with this is they are creating a scenario where there would be estimation, and then they are complaining that the estimation is unlawful. And is your let's start with this, who's got the burden of proof? Who's got the burden to prove this is a suitable property? The in this in the circumstance of I think the court correctly articulated during Miss Green-Kelly's argument that the state of Delaware is entitled to its own, it's entitled to a sheet property that is in the title to Delawareans, it is entitled to a sheet property that is in this foreign, it is entitled to a sheet property, it is unknown address. Yeah. So, so who's got the burden of proving that the property is is cheatable? In this circumstance, Your Honor, we have a universe of materials that do not, we are entitled to look at the 6,000 items to determine who is the owner of them. Right. We do not have a contrary to what Miss Green-Kelly is, is our ticket. The reason why I'm answering you in this way. Yeah, there's, this is like a, this is a pretty straightforward question. I think, do you have the burden to prove it's as cheatable? Or does Siemens have the burden to prove it's not as cheatable? It depends on the property and who is it is addressed to Your Honor. Wait, the burden shifts based on the kind of property it is? The burden is that the, that's, that Siemens provides documents to the state of Delaware, and it's on the basis of the documents. The state has no way of knowing without Siemens providing the documents. It's not my question. My question isn't whether you're entitled to inquire. What I don't think any, I don't think anybody's arguing that there's not some legitimate scope for administrative subpoena and fact-finding. The question is, at the end of the day, who's got the burden to prove that the property the universe you're talking about is as cheatable or not? And it's the state, doesn't the state own that burden? I believe it's the state. Siemens has the burden to prove that it is not unclaimed property after the state finds an indication in the records that it is unclaimed property. Okay. Now you're talking about a burden of production, aren't you? You're saying once the government says this is unclaimed property, then a burden of production with respect to evidence ends up on Siemens to demonstrate. But at the end of the day, you got to show that's a suitable property. I think I might be wrong about it. That's why I'm asking the question. Your Honor, the reason why I keep turning the question around on the question of documents is because it's not as simple as saying the state has the burden. The state is in a position where it must ask the holder of the unclaimed property for information for the state to be able to... Okay. Well, let me ask you this. When does it stop, right? Because you've heard Ms. Green-Kelley, and you've seen the briefing, and we have too, and the tale it tells is of extortionate behavior by the state of Delaware using a self-interested third party to come in and give wildly inflated estimates based on a universe of information, which clearly show that north of 90%, 95 plus percent of the people being talked about here don't live in the state of Delaware. And then on the basis of that saying, now, you owe us tens of millions of dollars and interest and penalties are going to run while you fight, and go ahead and make us an offer. That's the way they frame it. Instead of saying, well, they did it. They made it up. They created the problem, which we've heard, we've read. What else can you point to in that description of how things play out here that is an inaccuracy? How should that leave us with a false impression, what they've described? Your Honor, what's critical here to understand is that that is the one-sided, as you put it, history of what Ms. Green-Kelley has alleged in this case. So that's the complaint, and that is the facts as Siemens has articulated them. They are not the facts as the state sees them, and the state has not answered the complaint. Well, help us out then. What's factually inaccurate? When they say we've given them this universe of 6,000, Delaware is owed like five bucks. I'm exaggerating for a fact, but that's sort of the indication they've given us that there's a handful of Delaware holders here, Delaware creditors here. Everybody else is out of state. On the basis of that, even despite the Texas Trilogy, they're saying none of these other states would cheat. Delaware says we're entitled to it all. Give it to us all. When they say, no, you're not entitled to us all, all of that, the answer they get back is, well, make us an offer. Now, you just said that's not facts. Where is that not the facts? Your Honor, they have identified a universe of 6,000 items, but have not provided all the names and addresses and information that's needed for the state to determine whether there are Delaware addressed property in there, whether there is foreign addressed, whether there is unknown. The reason why we need the information that we have been seeking from Ms. Green-Kelley and from Siemens is to be able to determine what among that is the sheetable to the state of Delaware. Without having that, we're in the position of needing to escalate. Hold on, Ms. Dugan, so when she says we gave them the names, we gave them the addresses, we identified, you can identify from it whether it's a business debt or a consumer debt, all that information is information they have. She's just flat wrong? It's incorrect, Your Honor. Because what do you lack? One of the critical points here that is not yet in the record below, because we have not had a chance to file an answer, is that we are aware, not only from records that Siemens has provided, but also from records provided to the state from whistleblowers, that there is information that has not been provided to the state of Delaware. And there's a significant lack of reporting on the part of Siemens. One of the entities that is filed suit has never filed prior to 2009, and the other one has a limited filing history. And why that's important is because We're sort of, we've spun out of where I thought we were a minute ago, which was we were talking about a universe of 6,000 folks, right? Right. They say, we gave them all the information, everything with respect to that 6,000. And you're saying, no, they didn't? Correct. And I'm also saying that in addition to that, it is the state's belief that there is more than that. And that there is a, due to the historical lack of reporting, and based on the entity, and Siemens, both companies that have filed suit here, it is the belief, based on experience in the Asheet arena, that a company of this size and complexity likely has much more available. So you can go after these folks for 11 years, and you can then say, we're sure there's more, and just keep going. Is there no stopping point? Your Honor, the reason why the state has continued to pursue Siemens is because Siemens has not complied. Siemens has not provided the materials that have been requested. So we contest, I think this is one of the critical points here, Your Honor, is that we contest that the record that Ms. Green-Kelly is articulating actually is the record. It is not what the state, if the state were to answer today, many of the allegations in the complaint would be met with denials. The record keeping requirement was changed or instituted in 2017. So on the reachback issue, why should Siemens be obligated to do, to produce anything if you had a record, you had a, before 2017, you had the right to inspect, but there was no record keeping requirement of 15 years or any years of that matter. What role does that play in all of this? Judge Sirica, when you're talking specifically about the 6,000 items, those are items that Siemens has actually articulated they have records for and just have not provided the information for. So the record keeping issue is not one for the 6,000 items. And when it comes to the remainder of the examination, this examination was Siemens was aware that there was an examination going forward and the records, the trigger for the time record retention policy is triggered back from the initiation of the examination. I don't know if I've answered your question, Your Honor, but okay. Can I ask you a question about New Jersey retail and about the district courts distinguishing that? If I understood the district court correctly, the court said that this case was in contrast to the plaintiffs in New Jersey retail, because Siemens is not currently in the position of having to choose between prosecution or fines for noncompliance versus churning over funds. That was, you know, I think I've quoted accurately, there might be an ellipsis in there or two, but that was the gist of Judge Norica's analysis of why this case was different from New Jersey retail, right? Yes, Your Honor. Okay. So in New Jersey retail, I thought, and let me read it to you, that this is what we said. We said, and this is at page 388 of the opinion, card issuers, SVC issuers will suffer irreparable harm if the preliminary injunction is denied. If the state enforces chapter 25, issuers must either face prosecution and fines for noncompliance or turnover and cast remaining value. In other words, we framed it specifically as contingent. That is, we didn't say they are facing, we said, if the state enforces, if the state enforces, then the issuers will face prosecution and fines for noncompliance. Well, that seems to be precisely the circumstance here, isn't it? The question that the district court said, well, you're not facing that. They weren't facing it in New Jersey retail either. It was the threat of that happening, if enforcement happened, that led the court to say an injunction is appropriate. There's irreparable harm. Help me if I'm wrong and how I'm understanding it. Your Honor, I think there are simply too many steps here to get to the point where we are, where New Jersey retail was. So in this instance, the court has not, or the, I'm sorry, the state of Delaware has not issued a determination of unclaimed property owed to the state of Delaware from Siemens. But you are, you are telling them, and they say you've told them, again, if there's a factual dispute here, I guess we'll hear about it. But they say they told us specifically, no, interests and fines, they're on the table. That's running while we're fighting. That's, that is out there. The meter's running for you. So make us an offer. So Your Honor, I think you will get a denial of those faxes articulated by Ms. Green-Kelley when we eventually do file our answer. Is the meter running? Is the state got the position that while this is being fought, interests and penalties are happening? Or are you prepared to say, no, I can affirm to you, Your Honor, that this is not happening. We are not going to be seeking penalty and interest for the time that this is in litigation. Your Honor, right now, we don't even know if there's going to be a determination that Siemens has a liability at all. Okay. But just, just, can you answer that question? Can you say the state forgoes and will not seek interest in penalties for the time that this matters under litigation? I cannot say that as I'm standing here today. So then, so then the presumption I think is it is happening because that's what the statute provides for and interest and penalties are running. So why isn't this exactly like New Jersey retail? Because not only has the court, has the state of Delaware not issued a finding against Siemens, but it is possible that it is, that there would be a zero finding, although we do not think that's likely it is. True in New Jersey retail too, because in New Jersey retail, the question was, if would they enforce? And one more point, Your Honor, is, and this is essential to it, is that when we're talking about fines and interest or interest and penalties, we're talking about monetary harm. We're not talking about what was at issue in New Jersey retail, which was. And then recover. Pardon me? Can they, can Siemens recover that? The interest, if you're wrong on all of that. If we're wrong on interest and penalties, Your Honor. Yes, there could be a refund from the state. Correct. You're a sovereign. Are you waiving sovereign immunity? I'm not, Your Honor. If you're asking whether I think Judge Sirica's question was whether they can recover interest and penalties issued by the state. If they pay it. The answer to that is there could be a refund from the state of interest and penalties requested. Well, the state, you're saying the state in its largesse might give it back, but well, I don't want to put words in Judge Sirica's mouth, but at least if he doesn't mind me asking. You're saying the same thing. You're asking the same question. If they, if it turns out you're wrong, they can't sue you and get it back from you, can they? Because you're the state of Delaware and we'll say we got sovereign immunity, just like New Jersey retail, right? That's right, Your Honor. We do. Then we're not any different than New Jersey retail, are we? That's the irreparable harm that was identified in New Jersey retail. You can take the money and they can never get it back. No. If it is, if the question is whether the state can be sued for monetary damages, the answer to that is no, because of sovereign immunity that is not waived. If the question is whether they can get it back, if they're wrong, the answer is that, first of all, it's speculative because it hasn't happened yet. But second of all, it is potentially refundable. I think we even said that in our briefing. You might choose to give it back, is what you're saying. Right. There's a provision under the statute. Pardon me for a moment, Your Honor. I have... There is a provision in the state, a sheet statute that permits the filing of suit in the Court of Chancery to recover refunds. Do you have a citation that you can provide us? Yes, Your Honor. Just a moment. Well, if you don't have it, I mean, perhaps... I'm just, I'm looking at a large document, so I'm trying to determine... What is this citation to the... It's 12 Delaware Code 1170... I'm sorry, Your Honor. Well, you know what? I mean, perhaps you could just shoot us a letter with the citation. I can do that, Your Honor. Certainly. All right. Great. I had wanted to ask my colleagues, if you were done talking about this sheet, the matters we've already been discussing, because I'd like to actually have you discuss what we ought to actually be considering in this appeal. Again, the pendent jurisdiction, appellate jurisdiction issue. Sure. And just so that... No, no. Hold on. Hold on. Hold on. I want to get the appellee's point on that. It's okay. That's okay. Thank you, Judge Chigaris. That's actually what we came here today prepared to talk about, so that's a lifeline here. Well, it should have been the only thing that you were... Right. Absolutely not, right? But since we are here on the denial of a motion for from the state's perspective, that is what the court should be determining, and it should end there, because below, the district court never reached the issue of the likelihood of success on the merits. And it is only with the determination of likelihood of success on the merits does the issues of the interlocutory order, like everything that was brought into the motion to record, make it into this court's review for immediate appeal. Absent plaintiff filing her motion for preliminary injunction, she would not have had the ability to bring the motion to dismiss rulings before this court unless she were to have sought an interlocutory order. Right. But aren't they inextricably intertwined with what is properly before the court? Your Honor, I don't believe they are, because at the point... So the motion for preliminary injunction only considered the claims that had not been dismissed, or the claim that had not been dismissed, and the district court never got into the arguments that Ms. Green-Kelley is putting forth to this court as to what should constitute the irreparable harm, or the imminent... Pardon me, the merits. And... Irreparable harm is definitely in front of us, right? Irreparable harm is in front of you, Your Honor, but one of the issues that we have in this case is that Ms. Green-Kelley is bootstrapping a merits argument into the irreparable harm argument by talking about the procedural due process claim that was dismissed by the time the court got to dealing with the irreparable harm. So it's... Again, there are several layers here. You have a motion for preliminary injunction that the district court denied on the basis of lack of imminent risk of irreparable harm, and never reached the merits evaluation. And in order for Ms. Green-Kelley's arguments to make it back before you, you would have to look to the already dismissed claims of the district court. So the district court had several claims that were only on a motion to dismiss in the light most favorable to Ms. Green-Kelley on a record that only includes her allegations and nothing from the state. And those claims had already been dismissed by the time the court gets to the motion for preliminary injunction. Right. And so isn't it... Well, I shouldn't say isn't. Is it the case that in understanding whether there's irreparable harm, we necessarily have to have some factual background to understand it against, and we necessarily have to take the allegations of the complaint at face value for assessing that. In other words, maybe I'm just asking the same thing Judge Chigares was. Aren't these things tied up in a way that to get at what everybody agrees is in front of us, which is the determination about irreparable harm, we have to accept at least for the purposes of this discussion, not in a way that would bind future fact-finding by the court or a fact-finder down... Other fact-finder down the road, but we have to accept some factual background. And it stands as the merits that Siemens put forth in its complaint. I asked that poorly, but do you get what I'm trying to ask Ms. Duden? I do understand what you're asking, Your Honor. I think the problem there, and I agree that that is how it seems to be framed here, but I don't agree that the court... That is inexorably connected. And the reason for that is that this circuit has a rule that irreparable harm, first of all, is not just presumed. And this court, the circuit also has a rule that you can't just have... You can't have the merits qualify for what is irreparable harm. So there are two different prongs. And having not reached, having not met the prong of irreparable harm, you can't use the merits to bootstrap in and say, you can't overcome this prong, but you're going to have a chance to look at the second prong and then establish the first prong with the second one. Well, now I think we're about out of time. I'm going to ask my colleagues if they have any other questions. Judge Jordan, any more? Well, I have lots more questions, but I won't counsel or my colleagues' patience any further. I appreciate the chance to have asked a lot of questions. Thanks. Judge Sirica, do you have anything more? I have nothing. Okay. Thank you, counsel. We'll hear a rebuttal from Ms. Greentele. Your Honor, first of all, as you probably noticed, our complaint is quite detailed and quite long, and it concludes all the things that my colleague here has said. For example, one of the entities had never filed an unclaimed property report. They filed a voluntary disclosure agreement request, and the state denied them, even though the regulations didn't allow them to deny them. So we're not making this up. When you say you're not making this up, Ms. Greentele, we have a very pointed factual disagreement. You've said there's no information in that. Stick with the universe of 6,000. You say we gave them every piece of information that could possibly be needed to understand where the people lived or that there was no way to know where they lived and what kind of debt it was. There's nothing more that they could inquire about than we've done all we can. They say that's just not true. So how do we know the truth of this in the record? What does the record show? Where does it show? Exhibits N and M to the complaint, which is starting at page 267 of the appendix, is two letters from the two of the defendants. The first one says that when Seamans says they were done researching and defending against abandonment, she says the state finds Seamans's position highly concerning, is there are over 9,000 items, there were 9,000 at that time, for which no remediation has been provided by Seamans and where the remediation provided has been deemed insufficient. Further, it appears Seamans is refusing to research open items for which the owner's address is not in a participating state. She goes on to say if Seamans refuses to research and remediate the remaining open items, the state will be left with no alternative but to terminate Seamans's participation in the expedited audit exam. Said right is expressly reserved. So that was the only thing open. And then the state of theater when she terminated the exam said the same thing. So maybe I just don't understand what all that means. But help me understand. I was thinking you were going to read something that said, and we acknowledge you've provided all the information we need with respect to these six or 9,000. But that's not what you read. You read to me something that said, hey, we think there's still open information we need and you're refusing to give that's what it sounds like you read. Now it's remediation. Remediation is defensive information. Yeah, doesn't remediation doesn't remediation mean something like you've given us information. But now, if this isn't information that should show it comes to us, tell us your further information, right? No, no, not at all. What she's saying is what the status cheater said when she to defend yourself against a presumption of abandonment for 6,000 items with owner addresses in other states. If you don't do that, we are terminating you. And then in fact, they did. Well, wait a second. I thought you just I didn't hear the part you said about 6,000 with owner addresses in other states. I didn't hear you read that part. Well, because they attached the list to the letter. And the list was 6,000 items with owner addresses in other states or items we simply couldn't research because we don't have records. And that's in the record. And that is in the record. We filed the list under seal because it has the names of our customers. But it's under seal and it is in the record. The other thing I section 1175 of the Delaware statute says in claiming property from a holder, the state is cheaters burden of proof as to the existence and amount of the property and its abandonment is satisfied by showing evidence of the unpaid debt or undischarged obligation and passage of the requisite period of abandonment. It is the burden of proof of the state to identify and that's what they did. The list that I'm describing of 6,000 items has the name and address that the check number the amount every one of those 6,000 items, some as small as 50 cents. And they're telling us if you don't prove to us and defend against our arbitrary presumption of abandonment, and it is arbitrary because property isn't abandoned until it's five years dormant. And they say it's abandoned if you if you void a check after 30 days. So this presumption of abandonment, we have to rebut it in order to reduce the liability. But the liability stays at the amount in that report that the auditors provided. They've said it in their briefs. They said it to us in letters attached to the complaint. That is the only thing open the absolute only thing. And we have it in the affidavit. Now remember, we're on a motion for preliminary injunction. The defendants were not bound to the complaint. They could have submitted affidavits, they could have submitted something else. They didn't the only thing they submitted in an affidavit was the go back and forth that we had when we were trying to negotiate a standstill agreement. And the only reason we filed a motion for preliminary injunction was because they refused and this isn't my first rodeo. I have sued the state on these many times and they have always stood still on the audits. Even in the Temple Inland case, only one property type was at issue, but state stopped the rest of audit. So after six months of doing the same, doing nothing, they send a letter saying, we're going to keep going with the audit. So what do we do? Within two weeks, we filed a motion for preliminary injunction. Now that we're here, we have jurisdiction. And to get to the point, your honor, that you wanted to know about pendant jurisdiction, even the district court recognized the gravamen of the entire case is preemption. The reason that the on the auditors, the contingency auditors are able to violate due process is because they're conducting an audit that is in conflict with federal law. Didn't the district court rely mostly on irreparable harm as lacking in denying your preliminary injunction? But in New Jersey Retail Merchants, we satisfy all the elements of New Jersey Retail Merchants. It's a likelihood of success on the merits of preemption. We face penalties, mandatory interest of up to 50%, 25% and the issue that she never mentions ever in the opinion are two very significant facts. One is the irreparable harm from the tolling of the statute of limitations. They in Temple Inland, the court said that the statute of limitations issue was critical because the state could keep going as far back as they want. Here, it's critical because it lets them drag us along and hold us up for a settlement forever. Now, hold on Ms. Green Kelly. You started this by saying we're all the same as New Jersey Retail and then you started by talking about likelihood of success on the merits. Likelihood of success in the merits is not something that the district court addressed at all, right? Okay. Well, that's true, right? So, is that an issue that's properly before us or are we confined to considering what was the decisional point in the district court, the irreparable harm issue? Well, the reason there's no jurisdiction is because the issues are intertwined. You can't really determine whether the denial of the preliminary injunction based solely on irreparable harm based on the due process claim was sufficient because even in New Jersey Retail Merchants, we are facing penalties, interest, tolling of the statute of limitations that allows them to hold us up forever, potentially wrap us up with 40 million dollars that we can't spend. The companies are buying and selling each other. We have to disclose this. If somebody wants to buy, we got to disclose this. They're going to keep us open forever. So, the statute of limitations causes irreparable harm too and that's something the court never mentioned. The court also didn't mention the irreparable harm we had suffer from being held up admittedly just for a settlement. That's what they said. The secretary of finance said, we don't have to end this audit even though the statute requires them to issue a demand if they find a liability and he admitted the audit report shows what is owed. So, the irreparable harm factor is important because just a violation of the supremacy clause is enough for a permanent injunction. Even in OFC Com versus Markel, it was a motion for preliminary injunction but the court said, hey, the record is complete. It's a purely legal issue on preemption which it is here. None of those facts matter. What matters- Well, wait, wait, wait, wait, wait. When you say it's a purely legal issue, we've got one side of this case saying they haven't given us everything and we've got you saying we gave them everything. So, we're going to have to do a little sorting out but when you say this is a purely legal issue, just from the discussion today, it seems that there's a disagreement about what the facts are but Judge Garris, I think, was trying to ask you a question. Well, it's actually a practical thing. If we agree with you that there was irreparable harm, likelihood of irreparable harm here, what do we do with it then? Do we need to remand it? Well, frankly, I would ask that you decide the preemption issue here under Section 2106 of Title 28 of the U.S. Code because preemption is purely legal. The state statute- It's a two-step process. The state statute, Section 1176A, authorizes estimation and the regulations authorize estimation based on property Delaware can't claim. Very unambiguous but the problem is, and that what authorizes their audit, but the problem is the audit itself conflicts with federal law which is why, you know, the auditors- It doesn't conflict with federal law unless we accept your version of what the facts are about the audit, right? It conflicts if we accept what you're saying but they're saying that's not the facts so shouldn't the district court- If we agreed with you that the judge here, very capable district judge, just misunderstood New Jersey retail and got it wrong and that there is a showing of irreparable harm, then why would we not send it back to say, now you need to take a look at the record, assess the factual dispute which exists and make a determination about fact and about likelihood of success? Because the irreparable element is satisfied by the preemption claim which she dismissed. I just said, except that we said you're right about irreparable harm. She didn't talk about likelihood of success and you apparently have a dispute of fact because you're both saying different things to me and the other two of us here, like the three of us, we're hearing wildly different assertions about the facts. Well, I shouldn't speak for my colleagues. It certainly seems like alternative universes so why wouldn't the district court be the right place to sort that out? Because the issue of whether an unambiguous state statute is preempted by federal law can be decided as a matter of law. If that is true, then New Jersey retail merchants has been satisfied because penalties and interest, I mean she hasn't said they're not going to issue them and the statute says they shall issue the interest and they shall issue a demand and there's a high likelihood of success on the merits of the preemption claim. The court would have to go back, that's why there's pending jurisdiction because there is a high likelihood of success on the merits of the preemption claim. She got the rightness issue totally wrong. She said the reason Marathon doesn't apply is because Marathon dealt with a challenge to the audit of a company that wasn't incorporated in Delaware. That's not what it was about. I know I drafted the complaint, I wrote the briefs, I defended the audit. It was about exactly what is alleged here, which is that Delaware cannot audit property it knows has an address in another state and is claimed claimable by another state under the priority rules and this court and Judge Jordan, you authored the opinion in that matter and you said it is right. You said it's right because we're challenging the very authority to audit property that Delaware cannot claim under federal law. The only reason that you sent it back for dismissal without prejudice is because Delaware was saying they were conducting that first step to determine the precise debtor-creditor relationship but here there's no debate. They've already determined that Siemens is the holder. They've already determined that the addresses are in other states so other states have authority over them so they're done with that. The audit's over. I mean actually page 501 of that opinion describes this case. Let me read that quote. It says and it's this case. We're gonna have to wrap it up soon, counsel. Okay, it says a state's demands for information may become so obviously protectual and insatiable and the record so clearly developed that it is evident the result of the process will lead to conflict preemption. In such circumstances, it would defy logic to hold that the process itself cannot be preempted. Here is the key language. When an audit process drags beyond a legitimate inquiry, the priority rules may be triggered and the state's audit process preempted. There's where the rabbit goes in the hat, right? When an audit process drags beyond that point, is that not a factual question? Yes, but it's in the record. The record's done. The letters, the admissions by the defendants that they are done. I understand your point is that no reasonable view of this record could lead to any conclusion but that we've reached that point. I get that. They admit it. I'm not inferring anything. Their letters say because you won't defend against abandonment for these 6,000 items, we're terminating your audit. We're not going to end it. We want a settlement and then the items they attach to the letter are 6,000 items with owner addresses in other states. That is this case, you know, and you said it may be hard to determine. You've gone way over time now. I'm afraid I have to cut this off. Judge Jordan, anything more? No, no. Okay, Judge Sirica? Okay, great. I wanted to touch base with the appellee to see if they have their citation so maybe you don't have to worry about drafting us a letter. Your honors, can you hear me? Yes. Okay, and I apologize that I had it in front of me and I was looking at very small print and could not read it but it's $12 code 1179. Okay, great. Your honor, though, can I just make one comment about that? It says that you can you can honor us respectfully. If Ms. Green-Kelley is going to continue to argue, I would request that we have time for further rebuttal on some of the points that have been raised over the last well. Well, we gave you extra time as well and we're going to conclude now. This has been a very well contested case. The argument and briefing was excellent. We would ask the parties, though, to order a transcript. You can touch base with the clerk and I'd like the parties to split the cost of a transcript. We'll take the case under advisement.